Will the clerks please call the case? 1-24-2383-WC, Alexa Kern, widow of James Kern, appellant, cross appellee by Kurt Nearman v. the Illinois Workers' Compensation Comm'n et al., United Airlines, Inc., appellee, cross appellant by Karen Kuhn. Mr. Nearman, you may proceed. Thanks, Justice Holdridge. May it please the court, counsel, I'm Kurt Nearman. I represent proudly the Kern family in this really tragic case. We have a cross appeals in the case. I don't know if you want me to address anything in particular first, or I could just jump into the accident component. No, just proceed normally and then we'll take your cross appeal. You got it. So this was under every day of the week, this would be a compensable injury. The person had the fall, the injury in the plane while deplaning the plane after landing it in London, after going on a 14 hour trip, after being sent across three international trips over a 10 day period. Under the current and former traveling employee case principles, an injury sustained by a traveling employer rises out of employment if injured while engaging in conduct that was reasonable, conduct that was foreseeable. There's nothing unreasonable about what Mr. Kern, Captain Kern was doing at the time of this accident. There's nothing unforeseeable about what Captain Kern was doing at the time of this accident. There's case law out there, including a Supreme Court case, which suggests that any injury, as long as the person's engaged in reasonable, foreseeable conduct, any injury arising out of those activities, out of that becomes a compensable injury. And we get that through your 2017 case in Kanaga, that's a Justice Hudson ruling. Essentially, we have the same thing with the language that you have in your case in Curtis versus... It's a ruling of our court, Mr. Newman. That's true. That's true. Okay. So it should be specified as such. Yes. Okay. So we have a 2013 Curtis ruling, which essentially holds that. We have town of Cicero from 2024, which essentially says that. In fact, there's no language in those excerpts from those cases suggesting there's any limitations, there's any qualifications, there's any reservations on coverage. Therefore, he fell in the plane. He was deplaning the plane. That's part of his duties for United. This is a compensable injury every day of the year. Now that's part one. Under traveling employee principles, he wins the case. Part two, the family wins the case. He doesn't win anything. I'm sorry. Unexplained accidents. The commission decided that, well, we can't decide exactly what happened to result in the seizure. Therefore we deem both seizure and the fall unexplained. Unexplained accidents for traveling employees are always compensable injuries. Builder Square is a 2015 decision. No, no, no. It's a 2003 decision. Where the unexplained accident for land-based, ground-based workers was actually pulled back on a bit. And in light of what had happened in the, you know, the positional risk case from the Supreme Court. And in the cases that were used to illustrate the Builder Square, first of all, Builder Square doesn't apply because Builder Square is not a traveling employee case. No traveling employee case follows Builder Square. But even if somebody thought we should apply Builder Square, you look for fact patterns that give rise to a reasonable inference that there's a compensable injury here, including Knox County, items in the hand may have contributed to the fall. Sears Roebuck, break on the forklift could have contributed to the fall. General Motors, potholes may have contributed to the accident. Chicago Tribune, floor may have contained ice. Those are all in the brief. All they're doing is looking for something that supports a reasonable inference, and I think by using those pro worker illustrations, I think the court was telling us, look for pro worker illustrations in an unexplained accident setting for ground-based people. My client's a traveling employee. His risk were risks of travel, including, you know, the exhaustion that comes with traveling overseas. I'm sure we've all been there. So we went under traveling employee. We went under unexplained accident. Now, do you have any questions about those two parts of the case? Because otherwise we get into some real detailed argument about, you know, the standards that the commission applied to the case and whether or not they applied legal standards, which should be applied in a case like this. If not, okay, so what do we introduce to support some reasonable inference of a causal relationship? Well, sleep deprivation. We've got sleep deprivation for the overnight flight that he was compelled to join by United during his time. He was scheduled to be off work. We have flights scheduled 10 days before, including 30. I mean, we can take judicial notice, 34 time zones. The only doctor that testified to the impact of a time zone on the brain was Dr. Neri. Your brain requires a full day of recovery to reset the brain to the proper position. He had 34 time zones in a 10 day period. Uh, 28 of which before he was called to London on their day of the accident, we have Vegas nerve instability due to extended static positioning in the plane. Dr. Coe, the occupational medicine specialist is the only one to address that. Kessler did not address that. And the fact that you sit for a lengthy period of time in a confined spot without much movement puts you in a position where it relaxes the Vegas nerve, which leads to syncopal episodes of potentially seizure activity. So Dr. Coe can attributed the work demands or connected the work demands to the fall. Dr. Neri connected the work demands, specifically the busy travel schedule to the fall or to the seizures, to the syncopal episode. Dr. De Silva in London, in London connected the exhaustion, no sleep to syncopal and seizure episodes. Dr. Barnes from London connected seizures to sleep deprivation. Dr. Rowland from London connected sleep deprivation and core easel, which is cold symptoms to the seizure, just because it makes you, it makes the brain irritable and it makes you more likely to have seizures. So we put in the evidence that all of these things contributed. And if we're only looking for a reasonably rational connection, we've made it by miles on this case. So what do we see from the other side? Dr. Kessler was hired to present the theory that my client had an alcohol withdrawal seizure in the plane in London. Now, two problems with that. Number one, she couldn't even establish the elements for her own theory, including there was no proof of alcohol use. And when I really pushed her on it, she said, I don't care what he was doing the week before. I don't care whether. So she was going for the alcohol withdrawal theory, whether he used alcohol or not, which means there's no validity to that theory. And properly, the industrial committee, the workers' comp commission said, we don't buy it. We don't believe the alcohol withdrawal seizure theory, therefore, and they didn't appeal from that denial. So I would think that that's pretty much a settled issue. The second thing, even if my client had been heavily drinking, which he wasn't before, he was called out of the blue to go cover for a missing pilot. The reason he would have stopped drinking under their theory is because their work needs, their plane needs, their flight needs commanded his presence. He had to stop drinking. I mean, you want him to stop drinking if he's going to fly a plane. So just under that theory, even if he was drinking, which he wasn't, which is not illegal anyway, their demands, their work demands led to this accident. So that's accident. Does anybody have any questions before I get into the causation? Okay. Causation. Oh, also idiopathic. There's no evidence of an idiopathic explanation for the accident. That's really a defense that the employer should have to prove anyway. The guy was healthy. You know, he had never had these episodes before. This family wins their case. Causation. Okay. The commission identified three different things, each of which were obvious error in their causation analysis, and they didn't do much of a causation analysis. In fact, they put everything back on the accident and why this person was probably was not a compensable injury. So to causation, first of all, they decided that, oh, treatment, the arbitrator was concerned treatment ended by 2009. Okay. The accident was in 2008, treatment ended by 2009, therefore there's no causation. Two problems with that. We have records in our record from treatment after 2009. We have testimony about that treatment from lay witnesses and the doctors. We have the coroner's report referring to antidepressant medication in the man's system at the time of his death. We have Schlewitt, the psychiatrist who was, saw him and treated him and tried to treat him in 2013 when no case was on file because one had been DWP'd in 2012 and I wasn't tired until the next year, late 2014, see Schlewitt. Schlewitt says he lost his wings after this fall in London, he's severely depressed, he's self-medicating with alcohol, you need to get detoxed  The doctor recognized it was an existential issue. He unfortunately was not able to beat the demons. He was not able to overcome his addiction, but we don't penalize people that are susceptible to those things because this is a no fault system. So, and for alcohol use itself, the anti-intoxication defense wasn't even in effect until after our accident occurred. I think it came into effect in 2011. So that's no defense in the case either. So what do we prove up on causation for the death? We have two experts. We have Dr. Neary connecting the death. We have Dr. Koh connecting the death. We have Schlewitt, the psychiatrist, a year and a half before the accident saying things are going in the wrong direction, you need immediate detox. And that treatment, that treatment trailed off as did all the other treatment. They couldn't recover. He couldn't recover from this. I have unrebutted testimony from the family about how tragically this issue unfurled and if you've read it, it's just, it's horrible. What did the other side show on causation? They didn't show anything on causation because their whole, their whole defense was alcohol withdrawal because it's an alcohol withdrawal event. The expert said there can be, there is no causation to a work event because it's alcohol withdrawal. Well, commission said it's not an alcohol withdrawal seizure. We don't buy that. Therefore we win the case on causation also. So it's a compensable accident, justices. If anybody has a question for me on that. Okay. All right. Do you want me to address the cross appeal or would you like to hear what my friend has to say on the other side before I address that? You'll have time afterwards. You'll have time afterwards. Yes. All right. So, so what I would hope that you would do, what, what the family would hope that you would do is find a compensable injury happened in London, causally relate the death to the accident because they didn't defend the causation element in the case, the law firm who defended the case was on the ground defending the case as early as 2010 per information in the record. They were in contact with the corner by 2018, which is all well within the statute of limitations. You can find that at page 964 of the record. They get a fax from the corner out in Pennsylvania, Percocet or whatever the name is called. Nothing was surprising to them about what, what we were claiming or how we presented the case. And they had seven, they had 14 years from the time of the accident that's the time we tried the case to gather their defenses, put their witnesses together, and they just didn't do it. So please, you know, award the benefits to the family. It's tragic. And that's about it. Thank you. Any questions overall from the bench at this time? No. Thank you. Ms. Kuhn, you may present this time. Good afternoon. May it please the court. My name is Karen Kuhn. I am, I represent the FLE cross appellant, United Airlines. We agree with the circuit court that the commission's decision was not against the manifest weight of the evidence. The appellant argues here as to different inferences, which could have been drawn by the evidence. But while there are other inferences, which could be made, the plaintiff here failed to prove by a preponderance of the evidence that any accident actually occurred. The commission and by incorporation, the arbitrator wrote very thorough decisions outlining the specific facts and evidence and those which they relied upon to make their decision and their decision is well supported by those facts and evidence. The alleged injury here is a fall in the cockpit, which purportedly results in decedent hitting his head before he stumbled out in front of the air marshals and had a seizure. But that's not what the evidence shows. The air marshal was sitting in seat 2A. They didn't hear Mr. Kern first trip and fall and then get up and fall again. They just saw him walk out, scream, stiffen and collapse. Then they witnessed this tonic colonic seizure that he has. He's taken to Hillingdon Hospital and he says he just passed out as he hadn't eaten for two days. He reports that he had exhausted himself over the past couple of days doing heavy work gardening in the USA. He had a runny nose. His right ear was blocked. He didn't describe this history of tripping and falling in the cockpit and said, he says, he passed out. Two days later, he speaks to Dr. Hassan, the neurologist, and he says he was just suddenly became stiffened and started shaking. Also at that visit, he again mentions he wasn't feeling well. He had exhausted himself gardening. He had a cold and a blocked ear. He didn't report to these doctors. The air marshals didn't see that he tripped and fell and hit his head. No, instead he suddenly stiffened, started shaking, had this seizure. This is consistent with the air marshals witnessed and what he initially told all of the doctors that he talked to. This was not a trip and fall. This is not an unexplained fall. The commission found it was a seizure and that there was insufficient evidence to support that this was a work-related injury. The seizure activity, stiffening, shaking, and passing out are what Mr. Kern described to the medical professionals. He later, I think, realized that having a seizure disorder diagnosed is going to potentially ground him from flying. That's when he talks to Dr. Jekyll and says, well, maybe I slipped or tripped, reaching for my back. Dr. Jekyll doesn't find that persuasive and says, well, that's not in line with what is in the medical records that we've reviewed. He refers them to the epilepsy foundation and suggests he gets the statement from the air marshals, which we later get, but which Mr. Kern did not give to Dr. Jekyll because it didn't support his preferred version of events. This is not a trip and fall. This is not an unexplained fall. The commission found it was just a seizure related to some sort of personal condition that he had this seizure as he was exiting. He is a traveling employee. We don't dispute that, but he still failed to prove the alleged accident. The alleged injury is this tripping and hitting his head. Not everything that happens while somebody is traveling is compensable. The commission determined he had a seizure, which is a personal health condition, not related to his travel or to his employment. They noted in the record specifically where on November 3rd, 2009, he was and the death certificate indicates the seizure disorder as a secondary cause of the death, this is his personal health condition. The accident was what work comp decisions call idiopathic or due to a personal health condition. And this is not compensable even for a traveling employee. The commission found that his unsigned, undated description of the fall in the cockpit is not credible. It's not supported by the medical records, which I just discussed. And it's not supported by the air marshal's description of what they saw occur. That's his personal health condition is not something which is in the control of the employer. And even as a traveling employee, it's not compensable. They also looked at the other factors that are just that were discussed by counsel, um, you know, his having to fly, his having to, um, lack of food, lack of sleep and what the doctors testified to is that, um, these are things that could make him more susceptible to a simple sink a pole episode causing him to fall in his head in the cockpit, but the commission found he failed to prove that he did fall and hit his head resulting in, in the seizure in the cockpit. They instead stated accordingly, the presence of other factors, which may have led to such a fall or magnified its consequences are not persuasive in this case, as there is insufficient evidence of the alleged initial fall and no expert opinion that the additional factors were a sufficient cause in themselves of decedent seizure on the airplane. Um, with respect to the alcohol withdrawal, I'll Dr. Kessler did say he, she thought he was probably going through alcohol withdrawal. Um, you know, later on in the case, it's clear and, and his family members testified that he did go through alcohol withdrawal. So, um, you know, we're, their argument is that he didn't have, he didn't have an alcohol problem at the time, but he did develop one shortly thereafter. Um, we believe there's definitely signs in the records to support an alcohol, you know, condition, um, the fatty liver, the, the liver tests, um, Dr. Kessler, who, you know, as a qualified neurologist and certainly found that, that this was a reasonable explanation, the Hillingdale hospital records. Um, at least some people there felt that, um, he might be going through alcohol withdrawals in the notes. They suggested that he should reduce his alcohol intake. Um, in any event, uh, the commission did fail, did decline to find that the seizure was the result of alcohol withdrawal and, um, they didn't make any specific terminate determination as to the cause of the seizure, but the cause of the seizure was not this purported fall in the cockpit, which did not happen because they found this did not happen. And absent that event, there is no work accident. Um, can I just break in here? Were you going to address the original application and the dismissal? It's dismissal from our prosecution. Yep. Um, I can do that now. I was just one last thing on this. The fact that he had a, um, a, um, another seizure, uh, grand mal tonic colonic seizure in 2009 supports also that he has these underlying seizure disorder. He, at that time also reported flu like symptoms for a couple of days and reported he had been trying to fix the fence outside and had exhausted himself. So similar to what happened in 2008, you know, he had this kind of low grade illness and had overexerted himself and then has another seizure, um, in 2009. So that also just goes to the fact that this gentleman had a underlying seizure. You know, disorder that was not related to his employment. Um, we also would say that his death years later, there's even less evidence that that's related to the work accident. The coroner's report says he drowned. He had been battling drugs and alcohol. Um, he's found in a pond. There's a secondary cause of due to seizure disorder. Um, again, that's the personal condition. Um, and, and there's just not enough evidence to support that that's related to anything, uh, work related and would still rely on him having to prove that there was the original accident, um, with him tripping and falling and striking his head in the plane. Um, so our cross appeal, um, our position is that initially the accident happens in 2008, in 2009, he files his first application that three years later gets dismissed for want of prosecution. Um, two years later, um, he files a second application. So Ms. Kuhn, we're, we're familiar with the facts. So let me just put the question to you. Um, looking at Judge Stanton's opinion, um, he makes the point that the commission effectively truncated the limitations period in this case by its application of commission rule 9,020.90, and that there was no basis to do that. So if, you know, this is a case, unlike Farrar, Farrar, the claim became time barred, this claim was not time barred because benefits had been paid to the claimant up until his death. So, uh, how is it that, um, rule 9,020.90A, um, takes this claim out of the box and, uh, you know, dies in the vine when commission rule 9,020.90E expressly states that rule 9,020.90 does not abridge the statute of limitations as provided for under section 60 of the act? Because I would argue that it's not abridging the statute of limitations because he had the opportunity to pursue his claim, he had three years where he had this pending claim and he allowed it to get DWP'd, um, you know, and then he didn't reinstate it, he didn't follow the procedure to have it be reinstated. Um, the Illinois Supreme Court has upheld commission decisions, um, rules and the rules about reinstatement, um, in the cases that we cited. It's like the Schiffer case, the Schiffer case was a reinstatement at the commission level, right? That involved a reinstatement at the, a decision by the commission to uh, deny a request to reinstate and the court said, the Supreme Court said that was a discretionary decision. Yeah. So why does that apply at the circuit court level? Um, and how does, I mean, I'm just, I'm just struggling to understand how this claimant who, you know, could have brought his action as late as 2017, I think, under the limitations period under 6D, how he loses simply because he didn't file a motion to reinstate, uh, you know, if this case was in the circuit court in the first instance, it happens all the time, cases are DWP'd, right? Sometimes the plaintiff will move to reinstate it, sometimes they'll just file a new action. Right? Now they can file that new action, um, up to the point that the limitation period expires. You know, it could be even more than a year. Um, and so I'm just trying to understand how this case is so differently treated. I mean, I mean, Judge Stanton makes that point that this is effectively taking a limitations period enacted by the general assembly and shortening it. Well, the commission is, is charged with interpreting its own rules and they're entitled to deference. Um, and it's only to be set aside if it's clearly erroneous, arbitrary and reasonable. And we think it's reasonable for them to, you know, they've implemented this rule that this is how you reinstate a case. And, um, you know, a lot, you know, a lot of these cases get reinstated like six times and, and before they, you know, they say we're not going to reinstate it anymore. So that's a, that's a whole different issue, right? That's for better or worse, you know, we could talk about that in the case. Um, the commission in this case, however, felt that it, it was a nullity and that, that he didn't, because he didn't follow the rules that, you know, he shouldn't be allowed to reinstate it. Okay. And it doesn't matter whether the claim was time barred or not. Right. That's what they said. And would you agree that this is an issue of first impression? Yes. Okay. Yeah, it is. Um, and then what's your argument, what's your argument for in, uh, obviously from your position, what's your argument in favor of this position? My argument in favor of it is that, um, this, the Illinois Supreme court has, has, you know, looked at these reinstatement rules before and has, you know, given and has approved them essentially. Um, you know, they've allowed the commission to, um, you know, they've never said that this is limited in some way, they've said that the language that they use is that, um, no, I can't find it. Um, the language that they use is that they've got a right to, um, they can lose, a petitioner can lose his right to proceed before the commission by failing to file a timely petition resulting in a binding decision. So, so to me, he loses right to be heard by the commission after a timely petition has been filed by failing to proceed in accordance with the statuary requirements and the governing rules. And the court said that in the Illinois Supreme court said that in Bromberg. Um, I, I think that, you know, the Illinois Supreme court, it is a court, a case of first impression, but the Illinois Supreme court has approved these rules before with respect to, um, reinstatement being the, you know, a final bar to, if it's not reinstated, if they don't follow the process, they can't proceed on that. Um, and so that would just be our argument. So your best case is which case for that proposition? Um, Bromberg. That's the only case. Um, in Schiffer, um, petitioner failed to appear and it was reinstated. Court held neither the commission's refusal to reinstate the cause nor its failure to grant a further continuance amounted to an abuse of discretion requiring reversal of the circuit court server. So the Supreme court looked at the commission promulgated rules surrounding dismissals and has accepted the framework provided in the rules. But did it, did it, that case as language to have not having it in front of me, did it rule it was a discretionary call on the part of the commission? Yes. So if it's discretionary call, um, it's abuse of discretion analysis. Yes. Okay. So, and what's your common understanding of abuse of discretion as a, as a standard of review that the commission is, is charged with interpreting its own rules and they're entitled to deference, um, unless it is clearly erroneous, arbitrary or unreasonable. Okay. Thank you. Yeah. So Ms. Kuhn, is it, is it your position that isn't this a legal question? You have the interplay between a statute, which is the limitations period under 60. And you have a rule, uh, of the commission. And it seems like we're making a legal determination here. Yeah. Uh, yeah, it does. I mean, it, it is going to be an instant. I mean, it's going to be a new legal precedent because we've, uh, you know, a lot of times what's the legal precedent right now that we exist to us. There isn't, I don't think there is. I don't think this has been specifically addressed. Okay. Can Farrar doesn't that's it? Farrar says that the, um, the refusal to reinstate is a, um, bind is binding, um, and, you know, limits their ability to file. However, in Farrar, there, um, the time factor had run. So that's, you know, differentiated by that. You mean the time, excuse me, excuse me, which time factor be more specific? Had run their, um, statute of limitations had run in Farrar. Okay. So yeah. Statute had already run. And in this instance, it had not. Is that correct? Yeah. Okay. And a lot more questions, I think, from the bench. So I know your red light is on, but these are important questions. One other question. You mentioned a Bromberg. Did that involve a review of a decision by the commission to reinstate or not reinstate a case, or was it a review of the circuit court's decision? If you recall. I do not recall. Thank you. I believe it's in my brief. Well, does the circuit court make the decision to reinstate or does the commission? The commission makes the decision to reinstate, and then it gets reviewed by the circuit court before coming to you. Thank you. Any, any further questions from the court? No, hearing none. Okay. You will, uh, you will have a time in rebuttal. Okay. Okay. Mr. Newman. Thank you, judge. So the, the, the precedent that we have, it's important as the legislature sets the law. The only thing the legislature granted to the commission was the authority to enact procedural rules. No agency can enact the procedural rules, which changes the substantive import of a legislative enactment. So as judge Stanton properly found when the commission is applying its 60 day reinstatement requirement to limit or take away what was still a valid limitation period. That was an effort to make a substantive change and the limitation period, specifically AJ. And honestly, had they not asked for the AJ credit and the case was dismissed in 2012, I would not have been able to reinstate this or I would not have been able to file a new case for, for the underlying case itself. But since they asked for the AJ credit statute doesn't run until three years after the last payment that represents the AJ 2015 was last payment. 2018 was our deadline to file a case. We filed it in 2014. So, um, I think it's, it's really interesting. I, I, you can see in my response to their technical pleading brief that I don't think the commission has ever been granted the authority to really dismiss cases and I lay out all the reasons for that now, now, from our standpoint, looking at what we have is when judge Stanton sent the case back to the commission to do the relation back ruling that relation back ruling is also addressed under a abuse of discretion standard, and they decided that my client's addition of the widow. To the application was both timely and proper, and you can find that at appendix page 15 in their decision. It was timely and proper council doesn't even address that kind of stuff. So my, my position is there was no effort to prove it was an abuse of discretion to allow that relation back ruling to stand. And frankly, the, the Illinois Institute of technology case, I think is just pretty square with where we're at on the case in terms of allowing us to, to amend the pleadings. So as for, if you give any questions about the interplay of rules versus law. Okay. Um, so with respect to the other things, the, the commission did improperly narrow my client's, uh, pathway towards recovery by requiring that he prove up the hit to the head in the cockpit, as opposed to anywhere else on the plane. Traveling employee, the accident happened while he was engaged in his work activities. We don't even have to go there. Okay. If we go there, we have two narratives. We have one for my client. We have one from the, uh, the FAA, the federal air marshal, federal air marshal couldn't see what's going on in the cockpit because for my client to get his bag out of the, the storage area, he has to close the door. You can see that from the photographs. So when he comes out, all the FACs is what's happening to my client as he comes out of the, out of the cockpit. Yeah. He seizes, he goes down, he hits his head. You don't hit the back of your head behind your ear by falling face forward into first class. I mean, it's just illogical. I got two doctors saying that Kessler doesn't disagree. So this is a compensable case. It's tragic. It's horrible how it finished out, but the defense didn't really point on a defense against causation. The technical pleading, uh, defenses that they threw out, I think were properly addressed by judge Stanton. They were, it was not a abuse of discretion by the commission to relate the addition of the widow to the original filing that we made in 2014. That's the way we've always done these cases. And I'm wrong in my brief. I say 60 years. It's 83 years when I count up my firm or in our predecessor firms who almost a century, you know, using the same app. So I would just ask that you reverse the commission, find that it's a compensable accident. I addressed each of her arguments in detail in, in the reply brief and in my opening brief. I'm sorry for the length of the briefs. It, it had to be addressed. And, um, I hope you all have a great holiday. Thank you. Thank you. Counsel Coon, you may engage in rebuttal. Yeah. I just, um, wanted to get to, we didn't get to my last little argument here that he mentioned it, which is, um, that, you know, he, we believe that the death claim was, was not timely filed within the statute of limitations because it was amended in 2020, the statute of limitations ran in 2018, um, and she doesn't amend her application to allege a fatal claim list, you know, the date of death and mark fatal claim until 2020. Um, it had been previously amended after the, after James Kern's death in 2015, um, to list her as the widow. Um, but that would just go to benefits, which would accrue to, um, the estate, um, for any benefits accrued prying to his death, it proceeds, um, that way. And AO Smith tells us that a claim for death benefits under section seven is a separate and distinct claim for benefits. It's a separate and distinct, um, entire claim. And you can't just amend an application to allege an entirely new claim. So we believe that the, you know, even allowing them to amend it is wrong. And second, it was done untimely because it was outside of the statute of limitations. Um, we discussed Lake state engineering in our brief, the plaintiff there tried to an amended application, um, to a legend and a date of loss a year earlier. Um, and say that the later date that was originally filed was, uh, just an aggravation and the court said, no, this is time barred and you can't, you know, amend an application to just allege a whole new accident. Um, so all you can, all amendments, there are very liberal pleading amendments at the commission. Um, but all amendments aren't allowed and you can't allege, um, an entirely new occurrence, um, and a claim for death. You know, there's this whole body of case law about amending pleadings. And there's a distinction between amending a pleading to add a claim and amending a pleading to add a different party, it's harder to add a different party, but here, I mean, it's the widow. Uh, she's already been alleged to be the widow in 2015. Um, it just seems sort of formal or function, um, to say that this doesn't relate back. I mean, what, what are the salient points you would make to support your argument that it does not relate back? I would say the case I just said, Lake State Engineering, it, you don't get to relate back a separate set of, a separate accident, a separate occurrence. This is a whole separate set of benefits. Um, it's a separate set of parties that would get these benefits. Usually it's the widow, um, which is going to be involved with both, right? But section seven also outlines, you know, the kids and any other parties who might get death benefits. Um, and it, and AO Smith just talks about it being a complete, separate, distinct action. And you can't just amend a pleading to, to get it within time, um, by amending an action that's already on, on the table. You have to have a whole new action be filed, um, alleging this new, um, case, this new separate, distinct, um, injury. So are you saying that a new, a new claim had to be filed? They couldn't simply just amend the original claim? I believe so. Because of the separateness of the two claims. Yes. Okay. Uh, I had a question, uh, with regard to Mr. Nierman made the statement that he is unaware or not for sure that the commission has the authority to dismiss cases. Did you pick up on that? Yeah. Um, yeah, that's in his brief. He doesn't think that the commission can dismiss cases at all. Um, I think that there is plenty of, um, uh, case law out there in which, you know, three of them I've cited in my brief that, that the commission, the Supreme court allows the commission to dismiss cases. Um, they allow also for the reinstatement of cases, but they allow them to dismiss cases. So, um, yeah, that's not a thing. Oh, up on that. There was another nugget in there and that was, uh, substantive versus a procedural, whether or not reinstatement was one or the other. Do you have a position as to that? The act of reinstatement, is that more procedural or, or substantive law? Um, I think it has asked about aspects of both. I think that, you know, there's a procedure that you have to go through. And in that respect, you've got to follow the rules. Um, but there is an element of whether they, you have to provide a reason as to why it should be reinstated. Um, and these are summarily reinstated all the time. Um, but you've got to file, um, in this case, they didn't even file for reinstatement. Um, you know, so then it becomes jurisdictional. They didn't even file. Then it, you know, what the case law for our, and everything says is it's jurisdictional if you didn't even file the, there is deference given, um, the arbitrator, the commission can decide whether or not the reasons given for reinstatement are sufficient, um, they're pretty liberal in allowing reinstatement. Um, What are some of those reasons that are so that are fairly liberal? Can you give us an example? I mean, a lot of times things will get dismissed because, um, you know, somebody fails to appear, um, for, you know, and then if it could still feed, it's going to be automatically reinstated. Um, somebody can't find their client for a while. Um, somebody claims they didn't get notice of the dismissal. Somebody claims they, um, you know, a lot of those kind of things are pretty common and then they just get, um, reinstated. You've really got to, unless it's that it's been set for trial multiple times and nobody showed up. Um, that's the only situation we usually see where in actuality, something's going to, they're going to deny reinstatement that I've seen. I'm sorry. I didn't mean to cut you off. Finish your thought. I'm sorry. I was just going to say, I had one case that was dismissed six times and they only on the seventh time agreed to not reinstate it. So, um, it takes a while. Um, just to go back, I think you did address this issue. Um, Justice Taylor brought up rightfully that Farrar, um, is a little different in that, in that case, the statute, I believe, uh, had run and I believed you addressed that, but could you, could you do so for me now, because I'm curious if we have to look at the authority given to us and Farrar differently based upon the fact, uh, that they had run in that case, the statute of limitations. So the statute of limitations had run in Farrar, but, um, under, uh, section, they were trying to bring it under like the civil rules that say that there's a one year statute from when something's dismissed. And so they tried to get it within then. Um, and they said, no, that doesn't work. And you're past the statute of limitations. Um, but their language is that a claimant's failure to timely file a petition for reinstatement following a dismissal for want of prosecution results in a final judgment with respect to claimant's rights to recover workers, compensation benefits arising from the claim. So they didn't have the issue of, of the statute of limitation before them. If that hasn't run yet, but, um, you know, I think it's something good for this court to address it because there is not a official, there's not case law on that yet. So Farrar also said, uh, paragraph 17 and it's section 13-217 of the civil practice law, the court said, quote, the application of section 13-217 of the code to allow the refiling of workers' compensation claims that have been dismissed for want of prosecution beyond 60 days, up to a year after dismissal, after the statute of limitations has expired and without a showing of any justification for refiling would render the requirements of commission rule 90-20.90 meaningless. And, you know, I don't see how in this case, commission rule 90-20.90 would be rendered meaningless, particularly when subsection E of that rule expressly states that, um, that that rule does not abridge the statute of limitations provided for under the workers' compensation. My recollection is that that E that was added after Farrar and before was added after Farrar and after our situation that arose here. As a result of Farrar, they added that section E, I think. Um. So then how do we read E in light of that timing? Um, I mean, it may be a situation where, it may be a situation where our case is barred by the statute of limitations, but cases going forward are not. It may be, yeah, it may be of limited relevance at this point since they've added that language in E. Are there any further questions from the court at this time? Okay. Well, thank you, counsel, both for your fine arguments in this matter this afternoon. It will be taken under advisement. A written disposition shall issue. And at this time, a clerk of our court will escort you from our remote courtroom. Okay. Wish you both happy holidays. Happy holidays to you. Thank you. Thank you.